**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KA Fuciarelli, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Richard Paul Brown, et al.,<br><br>    Defendants. | No. CV-20-00279-PHX-DWL<br><br>**ORDER** |

    Pending before the Court is Defendants Richard and Gloria Brown's motion to withdraw the reference to the bankruptcy court. (Doc. 2.) Defendants seek to withdraw the reference so this Court can potentially determine whether the state secrets privilege applies to certain evidence Defendants wish to introduce during a trial in bankruptcy court. (*Id.*) For the following reasons, the motion will be denied.

## BACKGROUND

I.    <u>Factual Background And State-Court Proceedings</u>

    Defendants' motion marks the second time this Court has become involved in their ongoing battle in bankruptcy court with Plaintiff Kevin Fuciarelli and his company, The Fuciarelli Group LLC (collectively, "Fuciarelli").[1] The parties' dispute stems from Fuciarelli's $1 million investment in Defendants' company, Hot Salsa Interactive, LLC ("Hot Salsa"). (Doc. 8 at 2.) Fuciarelli claims this investment was fraudulently induced

---

[1] The first instance was Defendants' motion for leave to appeal, which the Court denied. CV-18-03894-PHX-DWL, Doc. 10.

because (1) "[Mr.] Brown represented that Plaintiff's $1 million would be used as business working capital," but instead it was "largely diverted to pay the Browns' delinquent federal taxes and other personal expenses including their home mortgages in Arizona and Australia," and (2) "[Mr.] Brown misrepresented the nature of Hot Salsa's business by falsely claiming that Hot Salsa was doing business with the government under federal contracts." (Adversary No. 2:18-ap-00057-DPC, Doc. 68 ¶¶ 8, 36, 40 [hereinafter, citations to the adversary proceeding docket will be abbreviated as "AP Doc."].)

In 2016, Fuciarelli sued Defendants for fraud in Arizona state court. (Doc. 8 at 3.) Defendants asserted a counterclaim, alleging that Fuciarelli had engaged in conduct that "cause[d] Hot Salsa to lose the ability to continue to be a contractor of the U.S. Government." (Doc. 8-5 at 8.) Defendants further alleged that this loss amounted to "several million dollars at present value." (*Id.* at 58.) Whether these "federal contracts" existed led to a protracted discovery battle—Fuciarelli repeatedly sought the contracts, but Defendants refused to produce them, claiming they were classified "and therefore cannot be discussed or shared." (Doc. 8 at 4; Doc. 8-5 at 69.)

On January 25, 2018, before this discovery battle was resolved, Defendants filed for bankruptcy. (Doc. 8 at 4.) This brought an end to the state-court proceedings. (*Id.*)

II.   Bankruptcy Proceedings

    A.   **Initial Stages**

On February 16, 2018, Fuciarelli initiated an adversary proceeding against Defendants. (*Id.* at 3; AP. Doc. 1.) The adversary proceeding complaint alleged that Defendants had procured Fuciarelli's $1 million investment through "false pretenses, a false representation, or actual fraud" and sought a declaration that any damages arising from that investment were nondischargeable under the Bankruptcy Code. (AP Doc. 1 ¶¶ 23-33.) In their answer to the complaint, Defendants again alleged that Fuciarelli had, in fact, caused Hot Salsa to lose its federal contracts. (Doc. 8-6 at 5-6 ["Upon admission of [Fuciarelli] as a Member of Hot Salsa, government contractors terminated any further government contracts with Hot Salsa for software, by reason of investigations conducted

into activities of Plaintiffs which were designated as unsuitable and presenting risk to such contractors to high security projects."].)

The alleged existence of these federal contracts again gave rise to a protracted discovery dispute. (Doc. 8 at 5.) On October 24, 2018, the bankruptcy court held a hearing to resolve this dispute. (Doc. 8-3.) During the hearing, Defendants' counsel argued that Fuciarelli's request for discovery pertaining to the contracts fell "well outside" the scope of the complaint. (*Id.* at 12.) Defendants' counsel also represented that Defendants' federal contracts were so sensitive even he didn't know what was in them. (*Id.* at 13.) In the end, the bankruptcy court ordered Fuciarelli to file an amended complaint[2] and further ordered that "as to this discovery dispute, I am going to order that all of the Defendant's responses be submitted to the Court on an in-camera inspection that is under seal. . . . Is there a confidentiality agreement? I want to see it. Is there a federal contract? I want to see it. . . . Only after I've looked at it will I then decide where to go with this." (*Id.* at 17-19.) The next day, the bankruptcy court entered a written order stating:

> Defendants shall submit to Plaintiffs full and complete written responses, as well as responsive documents . . . . To the extent that Defendants contend that they are legally prohibited from providing any portion of the Amended Discovery Responses directly to Plaintiffs, the legal basis for the contended legal prohibitions must be set forth in the Amended Discovery Responses and such portions shall be supplied solely to the Court for an *in camera review* so that the Court may make a determination as to the validity of Defendants' contentions.

(Doc. 13-6 at 3.)

B. **Motion For Leave To Appeal**

Rather than comply with the bankruptcy court's discovery order, Defendants sought leave to pursue an interlocutory appeal. (CV-18-03894-PHX-DWL, Doc. 2.) Defendants

---

[2] The amended complaint included a second claim for "the use of materially false written statements regarding a debtor or insider's financial condition on which a creditor reasonably relied if the statement were made with intent to deceive." (AP Doc. 68 ¶¶ 43-50.) This claim was later dismissed. (AP Doc. 107.) Thus, the only remaining claim is the claim discussed above. (Doc. 13 at 4 n.2.)

- 3 -

raised three arguments: (1) "Plaintiffs waived any allegation regarding federal contracts"; (2) "[t]he bankruptcy court erred in permitting an amended complaint after trial was set and without a formal request for leave to amend the complaint"; and (3) "[t]he bankruptcy court erred because compliance with the order is a federal crime." (*Id.* at 4-5.)

In an order issued on January 23, 2019, the Court denied Defendants' motion without reaching the merits of any of their challenges to the bankruptcy court's rulings. (CV-18-03894-PHX-DWL, Doc. 10.) Emphasizing the exacting standard applicable to motions for leave to appeal in the bankruptcy context, the Court concluded that Defendants were not entitled to relief because (1) the bankruptcy court's decision to allow Fuciarelli to file an amended complaint "appears to this Court, based on the limited material before it, to be entirely correct given the Browns' prior gamesmanship" and was, in any event, "the antithesis of the sort of decision that justifies interlocutory review," and (2) the bankruptcy court's issuance of the order compelling production of the federal-contracts evidence for *in camera* review was not subject to interlocutory review because "the Browns haven't identified any controlling authority establishing that this fact-bound ruling was incorrect" and because "the Browns failed to acknowledge that a different judge previously ordered them to produce [the federal contracts]." (*Id.* at 4-5.)

C.     **Subsequent Proceedings In Bankruptcy Court**

While Defendants' motion for leave to appeal was pending, the U.S. Department of Justice ("DOJ") was advised of the bankruptcy court's ruling on the discovery dispute. (Doc. 13 at 6.)  The DOJ began working "extensively with the parties and Bankruptcy Court to resolve this discovery dispute." (*Id.*)  This began with a 30-day stay so the DOJ could "determine how best to deal with the evidence." (Doc. 8 at 7; Doc. 13 at 6-7.)

At a March 21, 2019 status hearing, the bankruptcy court reiterated its earlier order that Defendants submit a complete discovery response for *in camera* review.  (Doc. 13 at 7.)  Defendants complied and also provided a copy of their response to the DOJ, which began reviewing the response "solely to determine if it contained classified information." (*Id.*)

On May 28, 2019, the bankruptcy court held another hearing. (*Id.* at 8.) During this hearing, which took place both on and off the record, the DOJ indicated that it was continuing to review Defendants' discovery response. (*Id.*; Doc. 8 at 6.) To facilitate the DOJ's review process, the bankruptcy court vacated a previously set trial date and scheduled another status conference. (Doc. 13 at 8.)

On June 27, 2019, the bankruptcy court held that status conference. (*Id.*) During this hearing, the DOJ provided Fuciarelli and the bankruptcy court with a redacted version of the discovery response that Defendants had previously provided. (Doc. 8 at 7.) Notably, the redacted version does not eliminate all of the details concerning Mr. Brown's federal contracts. (Doc. 8-6 at 94-99.) Among other things, it confirms that Mr. Brown has "held a top-secret security clearance with the United States government since 2008" (*id.* at 94), clarifies that "Hot Salsa was never a party to federal or government contracts. The contractual relationship was between myself [*i.e.,* Mr. Brown] and the government" (*id.* at 96), and states that when Mr. Brown received payment from the federal government, he would deposit the proceeds into Hot Salsa's bank account: "My level/amount of compensation varied . . . [and] I generally directed payments to Hot Salsa['s] account which also was in the business of mobile app development" (*id.* at 95). After reviewing the redacted document, the bankruptcy court ordered:

> The responses to Plaintiff's first request for admissions, first set of interrogatories, and first request for production of documents as redacted by the government will be admitted at trial. There will be no further discovery related to the questions posed in the written discovery, and at trial the questions that can be asked by either party of any party or witness will be capped by the redactions.

(AP Doc. 122 at 2. *See also* Doc. 8-6 at 91-92 [written order issued by bankruptcy court on July 2, 2019 confirming this ruling].) The parties were further urged "to work with the [DOJ] in coming to agreement with an acceptable protective order." (Doc. 13 at 8.)

After discussions concerning the proposed protective order proved unsuccessful, the bankruptcy court ordered the parties to submit declarations summarizing their anticipated direct testimony concerning the federal-contracts issue. (Doc. 8 at 7-8.) On August 31,

2019, Fuciarelli signed a declaration claiming that "Mr. Brown represented himself to me as a successful businessman who owned Hot Salsa, which Brown claimed was a growing business that had the ability to obtain federal contracts and that did in fact have federal contracts that produced 100s of thousands of dollars in revenue." (Doc. 8-6 at 102.) Fuciarelli's declaration also states that Mr. Brown had shown him "bank statements showing wire transfers into Hot Salsa's bank account of over $830,000. . . . Brown claimed that the deposits from these wire transfers were payments for work that Hot Salsa did under its federal contracts." (*Id.*)

On September 17, 2019, Mr. Brown signed a responsive declaration, which the DOJ then reviewed and redacted. (Doc. 8-6 at 110-12.) The redacted declaration contains information similar to the information contained in Defendants' redacted discovery response. In a nutshell, it states that (1) Mr. Brown periodically "received [funds] from the U.S. government" (*id.* ¶ 9), (2) Hot Salsa itself "had no relationship with the government outside of myself" (*id.* ¶ 5), (3) Mr. Brown would "always" deposit the funds he received from the government into Hot Salsa's bank account, because he believed he "had a fiduciary duty to direct all corporate opportunities to my entity performing services within the same areas" and "felt that directing these funds to me personally would be improper" (*id.* ¶¶ 9-10), and (4) "[t]he only statement I made to Plaintiff regarding government contracts was referenced in [an] email . . . [that] specifically stated 'Keep in mind that if you decide to invest, I/Hot Salsa Interactive have federal contracts that I will not be able to discuss with you" (*id.* ¶3).

On November 4, 2019, after the declarations had been submitted, the bankruptcy court held another status hearing. (Doc. 13 at 10.) In light of the DOJ's preference "to have the trial proceed by Declarations, with no cross-examination," the bankruptcy court ordered that the declarations would be used as the direct testimony at trial. (AP Doc. 138 at 2.) Additionally, Fuciarelli and Defendants were both authorized to submit final, supplemental declarations. (*Id.* at 2-3.) Fuciarelli took that opportunity but Defendants only resubmitted Mr. Brown's earlier declaration. (Doc. 8 at 8; Doc. 13 at 10.) Trial was

1 set for February 13, 2020.  (Doc. 13 at 10.)

2 On January 31, 2020, less than two weeks before trial was set to begin, Defendants filed the motion to withdraw the reference.  (Doc. 1.)

**ANALYSIS**

A. <u>The Parties' (And DOJ's) Arguments</u>

Defendants argue that the reference must be withdrawn because the DOJ has ordered the redaction of significant portions of Mr. Brown's declaration, the unredacted "information is necessary for a full and fair defense" during the trial in bankruptcy court, and it would promote judicial economy to withdraw the reference to the bankruptcy court now so this Court can determine whether the state secrets privilege applies to the redacted information.  (Doc. 2 at 3-5.)  Fuciarelli opposes this request, arguing that: (1) Defendants' motion is untimely, because they have long known of the bankruptcy court's plan to proceed with redacted declarations, and indeed participated for months in the process to formulate the declarations, only to file their motion on the eve of trial; (2) "[t]here is simply no practical reason or legal justification for the alleged need to 'perfect' the privilege" because there is no guarantee the DOJ will even invoke the state secrets privilege if the reference is withdrawn, the DOJ has already authorized Defendants to disclose some information related to Mr. Brown's federal contracts, and Defendants have failed to provide any non-conclusory reasons why this information is insufficient to provide a full and fair defense in the bankruptcy trial; and (3) in a related vein, any error by the bankruptcy court can be remedied on appeal.  (Doc. 8.)

On March 17, 2020, the DOJ filed a statement of interest.  (Doc. 13.)  The DOJ indicates that it "was prepared to follow the process identified by the Bankruptcy Court for trial to protect its interests" and was under the impression that all parties, including Defendants, were on board with that approach.  (*Id.* at 2-3.)  The DOJ takes no position on the merits but notes that Defendants "cannot seek to *compel*" the DOJ to decide whether to assert the state secrets privilege.  (*Id.*)  As such, the DOJ requests that, if the Court chooses to withdraw the reference, it be allowed extra time to confer with various agency heads to

determine whether the privilege should be invoked in this case. (*Id.* at 3-4.)

B. Discussion

Generally, a bankruptcy court "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. 157(b)(1). Similarly, a bankruptcy court "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." *Id.* § 157(c)(1). That said, "the district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court], on its own motion or on timely motion of any party, for cause shown." *Id.* § 157(d).

"In determining whether cause exists, a district court should consider the efficient use of judicial resources, the delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997). "The party seeking withdrawal bears the burden of establishing that withdrawal is appropriate." *In re N'Genuity Enters. Co.*, 2012 WL 3095002, *2 (D. Ariz. 2012).

A. **Core Vs. Non-Core**

As an initial matter, the usual approach—when evaluating a motion to withdraw the reference to the bankruptcy court—is to begin by determining whether the claim at issue is core or non-core. *Gillespie v. 100% Natural Gourmet Inc.*, 2015 WL 736296, *2 (D. Ariz. 2015). *See also Flores v. Gray Servs., LLC*, 2014 WL 4179888, *1 (D. Ariz. 2014) ("The Court must evaluate whether the claim is core or non-core, since it is upon this issue that such questions of efficiency and uniformity will turn.") (quotation omitted). "To determine whether a proceeding is core or non-core, courts look to see if the proceeding is created by title 11 . . . or depends upon resolution of a substantial question of bankruptcy law." *Gillespie,* 2015 WL 736296 at *2 (citation omitted).

Here, the underlying proceeding is Fuciarelli's adversary proceeding, which seeks to determine the dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A). (AP Doc. 1.) "Actions seeking a determination that a debt is not dischargeable in bankruptcy are

core proceedings." *In re Kennedy*, 108 F.3d 1015, 1017 (9th Cir. 1997). Defendants haven't argued otherwise. (Docs. 2, 10.) Thus, there is an argument that the core nature of the underlying claim weighs against withdrawing the reference.

On the other hand, Defendants aren't seeking withdrawal of the reference so this Court can decide the merits of the dischargeability issue. Instead, they seek limited withdrawal so this Court can address one discrete issue—whether the state secrets privilege applies to certain evidence Defendants wish to introduce during the bankruptcy proceeding. Given these somewhat unusual circumstances, the Court concludes that the core nature of Fuciarelli's underlying claim has little bearing on whether cause exists to withdraw the reference.

B. **Whether Cause Exists**

As noted, whether cause exists to withdraw the reference to the bankruptcy court turns on "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Security Farms*, 124 F.3d at 1008.

Here, withdrawing the reference would be highly inefficient from a judicial-economy perspective and would likely delay the ultimate resolution of dischargeability issue. First, it is important to note that Fuciarelli's fraud claim has two different components: (a) Defendants lied about how Fuciarelli's investment proceeds would be used (they promised the money would be used as Hot Salsa's working capital, then used it to pay back taxes and to support their lavish lifestyle), and (b) Defendants lied about the existence of Hot Salsa's federal contracts. The federal-contracts issue has nothing to do with the first theory. Thus, if Fuciarelli were to prevail in bankruptcy court based on the first theory, this could obviate the need (during any later appeal by Defendants) to assess whether Defendants' ability to present federal-contracts evidence was improperly restricted.

Second, it is also important to note that the DOJ and bankruptcy court aren't preventing Defendants from presenting any and all evidence concerning Defendants'

federal contracts. To the contrary, Defendants' discovery response and Mr. Brown's declaration, even after redaction, reveal that Mr. Brown possessed federal contracts, that he received payments pursuant to those contracts, and that he routed those payments through Hot Salsa's bank accounts (even though Hot Salsa itself didn't have any federal contracts). Given this backdrop, it is entirely possible that Defendants will be able to mount a successful defense during the bankruptcy trial as to Fuciarelli's second fraud theory. This, too, would obviate the need (in a future proceeding) to assess whether Defendants' ability to present federal-contracts evidence was improperly restricted.

Notwithstanding this, Defendants argue that "[t]he redacted information is critical to a full and fair defense" because "Rick Brown now needs to explain in full the scope of his services with the government to understand why those were company funds." (Doc. 10 at 1, 3.) The problem with this argument is that it is conclusory. The redacted discovery response and redacted declaration already contain information addressing why Mr. Brown believed he had a duty to deposit the federal-contract proceeds into Hot Salsa's bank accounts. It is possible the fact-finder in the bankruptcy proceeding will deem these materials sufficient. And even if not, the reviewing court will have the benefit of a developed record in any subsequent appeal.

Third, Defendants' motion is premised on the assumption that withdrawing the reference will enable this Court "to finally resolve the treatment of the [DOJ's] assertion that certain information is classified." (Doc. 10 at 2.) This argument overlooks that the state secrets privilege may only be invoked through a formal claim of privilege by the government. *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1080 (9th Cir. 2010) ("The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party.") (citation omitted). The DOJ has yet to assert such a claim here and could decline to do so even if the Court withdrew the reference. (Doc. 13 at 3 [noting that "Defendants' Motion to Withdraw cannot seek to *compel* the United States to assert privilege—a decision that is the Government's alone to make" and that if the Court withdrew the reference, the DOJ would then "complete the high-level deliberations"

necessary "to decide whether to assert privilege"].) Thus, one scenario (if the Court granted Defendants' motion and withdrew the reference) would be that the Court would wait to hear from the DOJ for some unspecified period of time, then receive word that the privilege won't be invoked, and then send the case back to bankruptcy court on the exact same record that existed before the withdrawal request. It is difficult to imagine how such an outcome could be viewed as an "efficient use of judicial resources" that reduced "delay and costs to the parties." *Security Farms*, 124 F.3d at 1008.

At bottom, Defendants' current motion is more of a request for interlocutory review of a pretrial evidentiary or discovery ruling than a motion to withdraw—the bankruptcy court has reviewed the redacted information and determined that an acceptable solution is to proceed to trial using the redacted information as Defendants' evidence. Defendants are now trying to make an end run around that decision.[3] Such an attempt does not serve judicial economy or reduce cost and delay. *Cf. Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103, 106-09 (2009) (declining to allow immediate interlocutory review of "disclosure orders adverse to the attorney-client privilege" because "[p]ermitting piecemeal, prejudgment appeals . . . undermines 'efficient judicial administration' and encroaches upon the prerogatives of [trial] judges, who play a 'special role' in managing ongoing litigation" and because "postjudgment appeals generally suffice to protect the rights of litigants . . . . Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial").

…

…

…

…

---

[3] This is exemplified by Defendants' reply, which makes unsupported assertions that the bankruptcy court's solution "violates substantive due process and procedural fairness." (Doc. 10 at 4.) In addition to citing no cases, Defendants' reply makes no mention of the standard for withdrawal.

Accordingly, **IT IS ORDERED** that Defendants' motion to withdraw the reference to the bankruptcy court (Doc. 2) is **denied**.  The Clerk of the Court shall terminate this action and enter judgment accordingly.

Dated this 30th day of April, 2020.

_____
Dominic W. Lanza
United States District Judge